IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KATHLEEN WALLEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 05-735-GPM |
| | ) |
| THE CITY OF BELLEVILLE, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**MURPHY, Chief District Judge:**

Defendant City of Belleville ("the City") has filed a motion for summary judgment seeking to take the remaining claims in this sexual discrimination suit from a jury.[1] According to the City, it is entitled to judgment as a matter of law. A hearing was held on November 6, 2006, and after carefully considering all of the pleadings and the arguments of counsel, the Court agrees with the City.

## BACKGROUND

Plaintiff Kathleen (Kathy) Wallen ("Wallen") is currently employed as a patrol officer with the City's police department. Wallen, a female, has held the rank of patrol officer with the City since 1997. In late 2002, she expressed interest in being reassigned from the patrol division to the narcotics unit. Sergeant David Ellis recommended Wallen for the assignment because he wanted

---

[1] The Court notes that claims against Lieutenant David Ellis and a claim for the intentional infliction of emotional distress were dismissed on the merits on February 22, 2006 (*see* Doc. 14).

to have a female officer working undercover to purchase illegal narcotics. The Chief of Police had the ultimate decision on whether the reassignment would occur.

On January 6, 2003, Wallen transferred to the narcotics unit. At the time, Sergeant Ellis, Lieutenant James Goodwin, and Armand Harris were the only members of the narcotics unit. There was no set time period for how long the reassignment would remain effective. Wallen's job responsibilities included buying narcotics from suspected drug dealers, writing reports on buys, and taking statements from confidential informants.

There are differing accounts concerning Wallen's performance as a member of the narcotics unit. According to the City, there were numerous problems with her performance which the Court finds it unnecessary to explore, as explained below. Not surprisingly, Wallen disputes the details of the various incidents and points out that she was never disciplined for any such conduct.

The pleadings reveal that Ellis fell far short of being a politically correct, sensitive, and diplomatic supervisor. Wallen alleges that he would easily get worked up, yelling at her and others -- even his computer. Among the insults that Wallen alleges that Ellis hurled at her are the phrases "dumb bitch" and "fucking retard".

At all relevant times, the City had a policy against harassment and discrimination. Wallen signed an acknowledgment form indicating that she had received and read the policy within the first few days of her employment. The policy requires an employee who has a complaint of harassment to go to his/her supervisor, the City Attorney, or the Director of Human Resources.

Wallen went to Lieutenant Goodwin in April or May of 2003 and talked with him about Ellis's incessant yelling. Wallen did not, however, complain specifically that she was being harassed because of her sex or gender. Instead, it appears she was simply complaining about Ellis's

cursing and basic obnoxious behavior, personality attributes which Goodwin recognized but did not consider to in any way invoke the policy against sexual harassment and discrimination.

Even when Wallen was assigned to the narcotics unit, her rank remained as patrol officer. The salary of a patrol officer is based on a union contract, and her pay did not change when she was reassigned. The reassignment was not a promotion; the promotion from patrolman is to sergeant, and that is done based upon the results of a written test, education, an oral interview with the Board of Police and Fire Commissioners (three individuals appointed by the mayor), and military preference.

### DISCUSSION

Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In considering a summary judgment motion, a court must review the entire record and draw all reasonable inferences in the light most favorable to the non-moving party. *See NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Enquip, Inc. v. Smith-McDonald Corp.*, 655 F.2d 115, 118 (7th Cir. 1981). On summary judgment a court may not make credibility determinations or weigh the evidence, because these are tasks for a factfinder. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betaco, Inc. v. Cessna Aircraft Co.*, 32 F.3d 1126, 1138 (7th Cir. 1994). In evaluating a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Title VII forbids certain employers "to fail or refuse to hire or to discharge any individual,

or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1)). The anti-retaliation provision also forbids employers from taking an adverse employment action against an employee for opposing discrimination. 42 U.S.C. § 2000e-3(a).

There is no direct evidence of sex discrimination in the record. Wallen need not offer direct evidence of discrimination, however, because a Title VII violation can be established through the burden-shifting method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Freeman v. Madison Metro. School Dist.*, 231 F.3d 374, 379 (7th Cir. 2000). Under the *McDonnell Douglas* method, Wallen must first establish a *prima facie* case of discrimination. This requires Wallen to show (1) that she was within a protected class; (2) that she was performing to her employer's legitimate expectations; (3) that she suffered an adverse employment action; and (4) that she was treated differently than similarly situated employees of a different sex. *See Simpson v. Borg-Warner Auto., Inc.*, 196 F.3d 873, 876 (7th Cir. 2001). If Wallen can make a *prima facie* case, the City must then articulate a legitimate, non-discriminatory reason for the adverse employment decision. *Id*. Wallen may then present evidence that the proffered reason is pretextual. *Id.*

In this case, the Court cannot move beyond the *prima facie* case. Although she meets the first element because she is a woman, even if the Court assumes for a moment that Wallen meets the second element and can show that she was performing to her employer's legitimate expectations, she fails the third part of the test because she cannot prove that she suffered an adverse employment action. "Typically, adverse employment actions are economic injuries such as dismissal, suspension, failure to promote, or diminution in pay." *Markel v. Board of Regents of Univ. of Wis.*

*Sys.*, 276 F.3d 906, 911 (7th Cir. 2002), citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761-62 (1998) ("A tangible employment action in most cases inflicts direct economic harm."); *Hunt-Golliday v. Metro. Water Reclamation Dist. of Greater Chicago*, 104 F.3d 1004, 1014-15 (7th Cir. 1997) (suspension and suspension pending termination); *Hunt v. City of Markham, Ill.*, 219 F.3d 649, 654-55 (7th Cir. 2000) (denial of a raise); *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 511 (7th Cir. 1999) (denial of a promotion). The Seventh Circuit has repeatedly held "that a lateral transfer without a loss in benefits does not constitute an adverse employment action." *Stutler v. Illinois Dept. of Corrections*, 263 F.3d 698, 703 (7th Cir. 2001), citing *Place v. Abbott Lab., Inc.*, 215 F.3d 803, 810 (7th Cir. 2000); *Hill v. American Gen. Fin., Inc.*, 218 F.3d 639, 645 (7th Cir. 2000); *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996).

While an employee can suffer an adverse employment action without economic loss, there must be evidence of something more than a preference for one job over another, mere inconvenience, or a change in job responsibilities. "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Crady v. Liberty Nat'l Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993), citing *Brown v. M & M/Mars*, 883 F.2d 505 (7th Cir. 1989) (employee terminated as a result of age discrimination); *Weihaupt v. American Med. Ass'n*, 874 F.2d 419, 427 (7th Cir. 1989) (plaintiff was displaced as departmental director). The Court notes here that Wallen's rank never changed from that of patrol officer. While her job responsibilities changed, she is still doing police work. This case is not like *Tart v. Illinois Power Co.*, 366 F.3d 461 (7th Cir. 2004), where an employee's alleged lateral transfer put him "outdoors

in the winter digging ditches under the command of a man he had previously trained." *Id.* at 468.

Wallen's case is similar, however, to *O'Neal v. City of Chicago*, 392 F.3d 909 (7th Cir. 2004). In *O'Neal*, the Seventh Circuit affirmed summary judgment for the defendant in a case where an African-American female police sergeant was transferred from the position of administrative sergeant to beat sergeant. Similar to the instant case, both jobs involved the same rank, pay, and benefits. Noting that "[b]y definition, any lateral job transfer will result in changes to an employee's job responsibilities and work conditions," the Seventh Circuit concluded that the plaintiff had failed to establish that the transfer was an adverse employment action. The Seventh Circuit found that O'Neal's complaints "about the transfer reveal[ed] only a 'purely subjective preference for one position over another,' which [did] not 'justify trundling out the heavy artillery of federal antidiscrimination law.'" *Id.* at 913, quoting *Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 745 (7th Cir. 2002).

Wallen admits that her rank and pay did not change when she switched from the patrol division to the narcotics unit. Similarly, nothing changed when she went back. Promotions to sergeant are considered by the Board of Police & Fire Commissioners and depend upon many factors. While Wallen argues that extended experience in the narcotics unit would give her a better chance at promotion some day, this assertion is nothing but speculation. Under these facts, Wallen's change in job assignment simply does not amount to an adverse employment action.

Because Wallen has failed to establish one element of her *prima facie* case for discrimination, the Court need not consider the reasons proffered for the transfer. Wallen's discrimination claim fails as a matter of law, and the City is entitled to summary judgment.

Finally, Wallen also has failed to state a *prima facie* claim for hostile work environment sexual harassment. To do so, she must show that (1) she was subjected to unwelcome harassment; (2) the harassment was based on her sex; (3) the harassment was severe and pervasive enough so as to alter the conditions of her environment and create a hostile or abusive work environment; and (4) there is a basis for employer liability. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998); *Patt v. Family Health Sys., Inc.*, 280 F.3d 749, 754 (7th Cir. 2002). When assessing a hostile work environment claim, the Court must "look to all the surrounding circumstances, including the frequency of the harassing conduct, its severity, whether it was physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance." *Patt*, 280 F.3d at 754, citing *Russell v. Board of Trs. of the Univ. of Ill.*, 243 F.3d 336, 343 (7th Cir. 2001).

On this claim, there is no evidence that the nasty words and ignorant comments from Ellis had anything to do with Wallen being a woman. She admits that Ellis yelled at everyone – men, women, and inanimate objects. While he may be a hostile person, Wallen has not shown that the harassment was based on her sex. Hostile and ignorant behavior not based on sex does not give rise to a Title VII claim. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). As the Supreme Court explained in *Oncale*,

> Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] … because of … sex.' We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations. 'The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'

*Id.* at 80, quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring). Wallen has not shown that she was exposed to conditions of employment that men were not, and she has failed to prove that Ellis's conduct was so severe and pervasive that it altered the conditions of her work environment. On this point, she has not identified any aspect of her job performance that suffered as a result of Ellis's rants.

And finally, in light of the foregoing, the Court need not decide whether Ellis was Wallen's supervisor or not to proceed to the question of employer liability. Either way, Wallen never complained of *sexual* harassment, and there is no evidence that the City was negligent in discovering or remedying the harassment. More than one element of a *prima facie* claim of sexual harassment is missing, and, therefore, the City is entitled to judgment on this claim as well.

## CONCLUSION

Accordingly, the motion for summary judgment (Doc. 15) is **GRANTED**, and this action is **DISMISSED on the merits**. The Clerk is **DIRECTED** to enter judgment accordingly. Defendant is awarded its costs.

**IT IS SO ORDERED.**

DATED: 1/16/2007

s/ G. Patrick Murphy
G. PATRICK MURPHY
Chief United States District Judge